**RAILWAY LABOR EXECUTIVES' ASSOCIATION, Appellant,**

**v.**

**CHICAGO AND NORTHWESTERN TRANSPORTATION COMPANY and Dakota, Minnesota and Eastern Railroad, Appellees.**

**State of South Dakota, Amicus Curiae/Appellee.**

**No. 87–5071.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 18, 1987.

Decided May 31, 1988.

John O'B Clark, Washington, D.C., for appellant.

Robert J. Corber and Ralph J. Moore, Jr., Washington, D.C., for appellees.

Before LAY, Chief Judge, and HEANEY and MAGILL, Circuit Judges.

HEANEY, Circuit Judge.

In this appeal, the Railway Labor Executives' Association (RLEA) asks the Court to

reverse the decision of the United States District Court for the District of Minnesota. The district court refused to enjoin the sale of a section of trackage by the Chicago & Northwestern Transportation Company (C & NW) to the Dakota, Minnesota & Eastern Railroad (DM & E) until C & NW exhausted the mandatory bargaining requirements of the Railway Labor Act, 45 U.S.C. §§ 151–188 (RLA). Because we find the RLA in this circumstance superseded by the authority of the Interstate Commerce Act, 49 U.S.C. §§ 10101–11917 (ICA), we affirm the district court.

C & NW had sought for many years to divest itself of certain marginal or light density rail lines in South Dakota. Normally, the sale or abandonment of rail lines is subject to the approval of the Interstate Commerce Commission (ICC). *See* 49 U.S.C. §§ 10901, 10903, 10905. The ICC had in the past refused to allow C & NW to rid itself of these rail lines because of the adverse impact of such action on the State of South Dakota.

In January, 1986, the ICC, in an ex parte rulemaking procedure, exempted as a class the sale of rail lines to "new carriers" from the prior approval requirements of the ICA. *See Ex Parte No. 392 (Sub. No. 1), Class Exemption for the Acquisition and Operation of Rail Lines under 49 U.S.C. 10901,* 1 I.C.C.2d 810 (1986), *review denied sub nom. Illinois Commerce Comm'n v. ICC,* 817 F.2d 145 (D.C.Cir.1987) (*Ex Parte No. 392*). Following this change in ICC policy, C & NW agreed on July 2, 1986, to sell 826 miles of its rail lines and assign 139 miles of its South Dakota trackage to DM & E, a newly formed railroad.

Beginning in May of 1986, when they learned of the railroad's intention to sell, seven of the unions representing C & NW employees served notices on the C & NW as required under Section 6 of the RLA, 45 U.S.C. § 156. These notices informed C & NW of the unions' intention to negotiate agreements to require both advance notification of any proposed transfer of rail lines and appropriate employee protective conditions. The unions further sought to obtain a pledge by C & NW to require DM & E to employ C & NW employees, to assume C & NW's collective bargaining obligations, and to apply appropriate employee protective arrangements. Under the terms of the RLA, these notices set in motion a lengthy bargaining process during which the status quo, i.e., the "actual objective working conditions" in existence at the beginning of the dispute, must be preserved. *Detroit & T. Shore Line R.R. v. United Transp. Union,* 396 U.S. 142, 149, 153, 90 S.Ct. 294, 298, 301, 24 L.Ed.2d 325 (1969).

While the parties engaged in discussions, C & NW continued with its plans to sell the South Dakota lines. Pursuant to this goal, both the C & NW and the DM & E filed verified notices with the ICC under *Ex Parte No. 392* to qualify for exemption from prior approval requirements. Once it became apparent that C & NW intended to consummate the sale, notwithstanding the fact that it had not complied with the mandatory bargaining requirements of the RLA, RLEA, an umbrella organization made up of representatives of the various rail unions representing C & NW employees, filed a complaint in the United States District Court for the District of Minnesota on August 19, 1986. In its complaint, RLEA sought a declaratory judgment that C & NW had an obligation under the RLA both to bargain over the proposed transfer and to maintain the status quo until that bargaining was concluded. RLEA also sought interlocutory and then permanent injunctive relief requiring C & NW to bargain and maintain the status quo. C & NW replied that the mandatory bargaining requirements of the RLA were preempted by the provisions of the ICA governing sales and labor protective conditions.

On August 27, 1987, the district court denied RLEA's motion for a preliminary injunction, declaring such relief would "be clearly at loggerheads with the decision of the ICC, particularly as expressed in Ex Parte 392." Shortly after that ruling, C & NW and DM & E consummated the sale, and on September 5, 1987, DM & E began operating over its newly acquired trackage. Once the sale was consummated, RLEA concentrated its attack on C & NW's bargaining obligation and duty to maintain the

employment status quo of its employees whom RLEA asserted were improperly affected. Both sides moved for summary judgment. On January 7, 1987, the district court orally denied RLEA's motion, again finding that the ICC's action in *Ex Parte No. 392* would be undermined if the provisions of the RLA were enforced and C & NW was required to bargain with the railroad unions. This appeal followed.

In *Burlington Northern R.R. v. United Transp. Union*, 848 F.2d 856 (8th Cir.1988), a case decided today involving a similar railroad transaction exempted under *Ex Parte No. 392* from normal ICC approval requirements, we held that the provisions of the ICA governing labor protective agreements supersede the mandatory bargaining requirements of the RLA. Specifically, we stated:

> Under the ICA, Congress sought to provide the ICC with the means to prevent labor strife by assuring "fair wages and working conditions in the railroad industry." 49 U.S.C. § 10101a(12). To accomplish this important *but limited aim,* Congress provided the ICC superseding authority to supervise and implement labor protective conditions in terms of acquisitions, sales, and abandonments of railroad lines. Yet it did so only insofar as this authority is necessary to "assure fair wages and working conditions" in order to ensure the free flow of commerce. In these narrow circumstances, the ICA supersedes the mandatory bargaining provisions of the RLA which provide an essentially duplicative or overlapping process designed to reach labor protective agreements.

*Id.* at 862.

The RLEA's claim would require us to invoke the mandatory bargaining provisions of the RLA. Because in the present circumstances these provisions are superseded by the ICA, we affirm the decision of the district court.

LAY, Chief Judge, dissenting.

I respectfully dissent. I cannot agree that the Interstate Commerce Act, 49 U.S.C. §§ 10101–11917 (1982) (ICA), was intended to supersede the mandatory bargaining requirements of the Railway Labor Act, 45 U.S.C. §§ 151–188 (1982) (RLA). I do not believe that Congress intended the ICA proceedings to be a means of providing labor security and protection which is inherent under the mandatory bargaining procedure of the RLA. The ICA focuses on national transportation policy. *See* 49 U.S.C. § 10101a. Although the interest of labor may be asserted in proceedings before the Interstate Commerce Commission (ICC), I agree with the Third Circuit's view that it is highly unlikely "that Congress intended that rail labor look for its sole protection to an agency that lacks expertise in this field." *Railway Labor Executives' Ass'n v. Pittsburgh & Lake Erie R.R.*, 845 F.2d 420, 446 (3d Cir.1988). It is clear to me that the ICC lacks expertise in the field of labor security. I respectfully conclude that Congress did not intend to include labor protective conditions within the ICC proceedings so as to supersede labor's protective mechanisms under the Railway Labor Act.